# EXHIBIT 2

VAUGHN INDEX
Revised on October 15, 2015
Gabrion v. United States Dept. of Justice, et al.
Civil Action No. 2:15-cv-00024-WTL-WGH
FOIA Request No. 2013-03547 – February 28, 2015 & March 31, 2015 Release
Documents Withheld in Full

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| 1 | 223 | Statement of Reasons and Presentence Investigation Report in United States v. Marvin Charles Gabrion, 1:97-CR-145-01 (W.D.MI.). | (b)(7)(F) | The records were withheld in full under Exemption (b)(7)(F).<br><br>The records consist of Presentence Investigation Reports (PSR) and Statements of Reasons (SOR) in inmate Gabrion's criminal case.<br><br>Program Statement 1351.05, Release of Information, prohibits inmates from possessing their PSR and SOR for security reasons, but does allow inmates to review their PSR and SOR maintained in their Central File.<br><br>Although the FOIA requestor is seeking these records on inmate Gabrion's behalf and with his consent, the PSR and SOR contain sensitive information that, if released while Gabrion remains incarcerated, is nonetheless likely to endanger his life or physical safety if known by other individuals. |

1

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| | | | | |
| 2 | 6 | Incident Report issued to third-party inmates for incident at FCI Milan on February 6, 1999. | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(c) were applied to withhold information regarding the BOP's discipline of third-party inmates. Disclosure of this information would be an unwarranted invasion of the other individuals' privacy. |
| 3 | 1 | Hand-written note containing a third-party individual's name, address and phone numbers. | (b)(6)  (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold this record as it contains the personal information of a third-party. Disclosure of this record would be an unwarranted invasion of other individual's privacy |
| 4 | 18 | Discipline Hearing Officer Report for a third-party inmate drafted by Robert Whitehouse, Discipline Hearing Officer, dated March 18, 1999. | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(c) were applied to withhold information regarding the BOP's discipline of third-party inmates. Disclosure of this information would be an unwarranted invasion of the other individual's privacy. |
| 5 | 4 | Checklist for DHO action completed by Robert Whitehouse, Discipline Hearing Officer, for incident report issued to a third-party inmate regarding an incident that occurred on February 6, 1999. | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(c) were applied to withhold information regarding the BOP's discipline of a third-party inmate. Disclosure of this information would be an unwarranted invasion of the other individual's privacy. |

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| 6 | 11 | Memorandum regarding February 6, 1999 incident at FCI Milan drafted by Lt. R. Flick, Special Investigative Supervisor, to Joseph Scibana, Warden, dated February 26, 1999. | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | Exemptions (b)(6) and (b)(7)(c) were applied to withhold information regarding the BOP's discipline and program assignments for third-party inmates, as well as their names, register numbers, descriptions of injuries, discipline and criminal histories. Disclosure of this information would be an unwarranted invasion of the other individuals' privacy.<br><br>Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding the investigation of the incident, responses by staff and inmates, findings of the investigator and recommendations regarding the disposition of the incident reports, safety, and inmate monitoring and classification determinations. Exemption (b)(7)(F) was also applied to withhold personal information regarding third-party inmates. Disclosure of this information would reveal law enforcement techniques and procedures which could reasonably be expected to |

| Group Number | | Pages | Description | Exemption | Justification |
|---|---|---|---|---|---|
| | | | | | risk circumvention by inmates and/or endanger the life or physical safety of inmates and staff. |
| 7 | A | 3 | Memorandum regarding February 6, 1999 incident at FCI Milan drafted by S. Needham, Senior Officer, to Lt. R. Flick, Special Investigative Supervisor, dated February 6, 1999. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemptions (b)(6) and (b)(7)(c) were applied to withhold the names, register numbers and descriptions of injuries for third-party inmates. Disclosure of this information would be an unwarranted invasion of the other individuals' privacy.

Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding the actions taken by staff or inmates during or in response to the incident, search techniques utilized, and the investigation of the incident. Exemption (b)(7)(F) was also used to withhold personal information of third-party inmates. Disclosure of these records would reveal law enforcement techniques and procedures and could reasonably be expected to risk their circumvention or nullification. Disclosure of this information could also reasonably be expected to endanger the life or physical safety of inmates and staff. |
| | B | 6 | Memorandum regarding February 6, 1999 incident at FCI Milan drafted by Lt. R. Flick ,Special Investigative Supervisor, to M. Thompson, Captain, dated February 6, 1999. | | |
| | C | 1 | Memorandum regarding February 6, 1999 incident at FCI Milan drafted by C. Liolli, Correctional Officer, to Lt. R. Flick, Special Investigative Supervisor, dated February 6, 1999. | | |
| | D | 2 | Memorandum regarding February 6, 1999 incident at FCI Milan drafted by T. VanBrocklin, Senior Officer, to Lt. R. Flick , Special Investigative Supervisor, dated February 6, 1999. | | |

4

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| 8 | 16 | Pictures of third-party inmates and evidence associated with a February 6, 1999 incident at FCI Milan. Pictures were taken by Lt. R. Flick, Special Investigative Supervisor, on February 6, 1999, and include the photographed inmates' names, register numbers, and a description of the evidence or inmate injuries and suspected cause of the injuries. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemptions (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F) were applied to withhold the pictures of third-party inmates, along with their names, register numbers and descriptions of their injuries. Exemption (b)(7)(E) was also used to exempt pictures and descriptions of the evidence associated with the February 6, 1999 incident. Disclosure of these records would be an unwarranted invasion of the third-party inmates' privacy and would reveal law enforcement investigative techniques and procedures that could reasonably be expected to risk circumvention of the law and/or endanger the life or physical safety of inmates or staff. |
| 9 | 4 | Clinical Encounters for third-party inmates, dated February 6, 1999. | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold the medical records of third-party inmates generated in response to an incident at FCI Milan on February 6, 1999. Disclosure of this information would be an unwarranted invasion of the third-party inmates' privacy. |
| 10 | 1 | Incident Report issued to third-party inmate regarding incident in the USP | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(c) were applied to withhold information regarding the BOP's |

5

| Group Number | | Pages | Description | Exemption | Justification |
|---|---|---|---|---|---|
| | | | Terre Haute Special Confinement Unit on August 30, 2007. | | discipline of third-party inmates. Disclosure of this information would be an unwarranted invasion of the other individual's privacy. |
| 11 | | 19 | Staff Injury Assessment and Photographs, dated May 25, 2009. | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold the personal information, description of injuries and images of staff. Disclosure of this information would be an unwarranted invasion of another individual's privacy. |
| 12 | | 16 | Program Forms contained in inmate Gabrion's Central File. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemptions (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)F) were applied to withhold these records as they pertain to third-party individuals. Disclosure of these records would be an unwarranted invasion of other individuals' privacy and will reveal law enforcement techniques, procedures and guidelines that could reasonably be expected to risk circumvention if revealed and would endanger the life or physical safety of third-party individuals. |
| 13 | A | 1 | Correspondence dated July 20, 2009, from third party, non-inmate addressed to USP Terre Haute Counselor Bruce Ryherd regarding communications with inmate Gabrion and | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold these records as they pertain solely to third-party individuals. Exemptions (b)(7)(E) and (b)(7)(F) were also applied as disclosure of these documents would |

6

| Group Number | | Pages | Description | Exemption | Justification |
|---|---|---|---|---|---|
| | | | placement on his approved telephone list. | | reveal law enforcement techniques, procedures and guidelines in monitoring and classifying inmates and could reasonably be expected to endanger the life or physical safety of third-party individuals if disclosed. |
| | B | 1 | Correspondence dated November 7, 2005, from USP Terre Haute Warden Mark Bezy to third party, non-inmate regarding correspondence privileges with inmate Gabrion. | | |
| | C | 2 | Correspondence dated October 24, 2005, from third party, non-inmate regarding correspondence privileges with inmate Gabrion. | | |
| | D | 1 | Correspondence dated January 16, 2007, from a third party, non-inmate addressed to USP Terre Haute Counselor B. Ryherd regarding placement on inmate Gabrion's approved telephone list. | | |
| | E | 1 | Correspondence dated January 15, 2007, from a third party, non-inmate addressed to USP Terre Haute Unit | | |

7

| Group Number | | Pages | Description | Exemption | Justification |
|---|---|---|---|---|---|
| | | | Manager R. White regarding placement on inmate Gabrion's approved telephone list. | | |
| | F | 2 | Correspondence dated March 21, 2002, from USP Terre Haute Warden Keith E. Olson to third party, non-inmate regarding communications between third parties and inmate Gabrion. | | |
| | G | 1 | Correspondence dated July 7, 2003, from USP Terre Haute Warden Keith E. Olson to a third-party, non-inmate regarding visitation privileges. | | |
| | H | 1 | Partial correspondence dated June 25, 2003, from a third party, non-inmate addressed to USP Terre Haute Warden Keith E. Olson. | | |
| 14 | | 44 | Inmate Population Monitoring Records contained in inmate Gabrion's Special Investigative Services File, dated January 30, 2013, June 10, 200?, and May 28, 2009. | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold information pertaining to third-party individuals.  Disclosure of this information would be an unwarranted invasion of other individuals' privacy<br><br>Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold monitoring, |

8

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| | | | | classification and management techniques and determinations regarding inmate Gabrion, including the information relied upon to make those determinations. Disclosure of these records would endanger the life or physical safety of inmate Gabrion, third-party imates and staff and enable inmates to circumvent and/or nullify the effectiveness of this monitoring and classification procedure. |
| 15 | 6 | Inmate Population Monitoring Records contained in inmate Gabrion's Special Investigative Services file, dated September 12, 2001. | (b)(7)(E) (b)(7)(F) | Exemption (b)(7)(E) was applied to withhold law enforcement techniques used to manage and monitor the inmate population. Disclosure of these records would enable inmates to circumvent and/or nullify the effectiveness of this technique. Exemption (b)(7)(F) was applied to withhold the programming assignments the BOP uses to classify and monitor groups of inmates. Although the FOIA requestor is seeking these records on inmate Gabrion's behalf and with his consent, the programming assignment is sensitive information |

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| | | | | that, if released while inmate Gabrion remains incarcerated, is nonetheless likely to endanger his life or physical safety if known by other individuals. |
| 16 | 6 | E-mail, dated October 6, 2006, addressing law enforcement procedure used to monitor inmates. | (b)(7)(E) (b)(7)(F) | Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold an e-mail discussing a law enforcement procedure used to monitor and track inmates subject to specific reporting requirements. The e-mail also discusses steps that must be taken by staff. Accordingly, disclosure of these records would enable inmates to circumvent and/or nullify the effectiveness of the procedure. Disclosure of this information could also reasonably be expected to endanger the life or physical safety of third parties. |
| 17 | 5 | Program Forms contained in inmate Gabrion's Central File dated January 30, 2013. | (b)(7)(E) (b)(7)(F) | Exemption (b)(7)(E) and (b)(7)(F) were applied to withhold these records used by the BOP to monitor and classify inmate Gabrion. Disclosure of these records would enable inmates to circumvent and/or nullify the effectiveness of this monitoring and classification system and would endanger the life or physical safety of |

10

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| | | | | inmate Gabrion and staff. |
| 18 | 16 | Inmate Population Monitoring Records contained in inmate Gabrion's Special Investigative Services file, dated May 28, 2009 and June 10, 2009. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were applied to these records to withhold personal information of third parties.  Disclosure of this information would be an unwarranted invasion of the other individuals' privacy. Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold techniques and procedures used by the BOP to monitor and track inmates subject to specific reporting requirements.  Disclosure of these records would enable inmates to circumvent monitoring and would endanger the life or physical safety of third parties. |
| 19 | 5 | Central Inmate Monitoring (CIM) Clearance and Separatee Data for Marvin Gabrion, dated May 25, 2009. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | These records were withheld under (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F). The withheld information consists of inmate names, register numbers, and staff comments regarding the BOP's incarceration and management of those inmates.  The BOP has determined that these individuals need to be separated from inmate Gabrion.  Release of this information would constitute an unwarranted |

11

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| | | | | invasion into third-party inmates' privacy interests, would reveal law enforcement techniques or procedures, the disclosure of which would reasonably be expected to risk circumvention, and is likely to endanger the life or physical safety of the third-parties if known by inmate Gabrion or other individuals due to the same reasons underlying their separatee status. |
| 20 | | May 28, 2009 video recording in the USP Terre Haute Special Confinement Unit Visiting Room. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemption (b)(6) and (b)(7)(C) were applied to withhold the images of third-party individuals who were recorded in this video, as disclosure would be an unwarranted invasion of their privacy.<br><br>Exemptions (b)(7)(E) and (b)(7)(F) were also applied to withhold the video, as disclosure would reveal law enforcement procedures and techniques including, visiting room camera location, staff response time and procedures, and locations not recorded by the visiting room camera, which, if disclosed, could reasonably be expected to risk circumvention or endanger the life or physical safety of third parties. |

| Group Number | Pages | Description | Exemption | Justification |
| --- | --- | --- | --- | --- |
| 21 | 2 | Two telephone calls conducted on January 21, 2013, at 9:32 a.m., and January 6, 2013, at 2:23 p.m., between inmate Gabrion and a third party. | (b)(6) | Exemption (b)(6) was applied to withhold the conversations of third-party individuals who participated in these telephone calls. The calls were recorded into the Inmate Telephone System (ITS), which saves the telephone call into a .wav computer format. This format does not provide a means to download the computer files to a cassette tape. Accordingly, the BOP does not have the capability to reasonably segregate inmate Gabrion's portion of the conversation from the recording and the entire telephone call must be withheld. Without proper consent from all parties to the telephone call, disclosure of this information would be an unwarranted invasion of other individuals' privacy. |

13