UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **MARVIN GABRION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cause No. 2:15-cv-24-WTL-DKL |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **JUSTICE and UNITED STATES BUREAU** ) | |
| **OF PRISONS,** ) | |
| ) | |
| **Defendants.** ) | |

### ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the parties' cross-motions for summary judgment. The motions are fully briefed, and the Court, being duly advised, **GRANTS** the Defendants' Motion (Dkt. No. 46) and **DENIES** the Plaintiff's motion (Dkt. No. 39) for the reasons set forth below.

### I.      STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted). "'[W]e look to the burden of proof that each

party would bear on an issue of trial.'" *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.     BACKGROUND

On December 31, 2012, attorneys for Plaintiff Marvin Gabrion, an inmate who was sentenced to death in the United States District Court for the Western District of Michigan, filed on his behalf with the BOP a request for records relating to information maintained during his custody at USP Terre Haute. The BOP sent acknowledgment letters to Margaret O'Donnell, one of Gabrion's attorneys, on January 17, 2013, and January 29, 2013. Gabrion filed the instant civil action in January 2015. It was not until February 23, 2015, – after the filing of the instant lawsuit – that the BOP finally provided records and other materials responsive to Gabrion's December 31, 2012, FOIA request. The BOP provided additional material on February 28, 2015; March 31, 2015; April 17, 2015; August 27, 2015; and October 15, 2015. This material totaled 4,283 pages of documents and recordings of 18 telephone calls in full and 1,700 pages of documents in part. The groups of documents that remain at issue and the reasons given for withholding them as described in the *Vaughn* index are as follows:

| Group Number | Pages | Description | Exemption | Justification |
|---|---|---|---|---|
| 10 | 1 | Incident Report issued to third-party inmate | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(c) were applied to withhold |

2

| | | | | | |
|---|---|---|---|---|---|
| | | | regarding incident in the USP Terre Haute Special Confinement Unit on August 30, 2007. | | information regarding the BOP's discipline of third-party inmates. Disclosure of this information would be an unwarranted invasion of the other individual's privacy. |
| 11 | | 19 | Staff Injury Assessment and Photographs, dated May 25, 2009. | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold the personal information, description of injuries and images of staff. Disclosure of this information would be an unwarranted invasion of another individual's privacy. |
| 13 | A | 1 | Correspondence dated July 20, 2009, from third party, noninmate addressed to USP Terre Haute Counselor Bruce Ryherd regarding communications with inmate Gabrion and placement on his approved telephone list. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold these records as they pertain solely to third-party individuals. Exemptions (b)(7)(E) and (b)(7)(F) were also applied as disclosure of these documents would reveal law enforcement techniques, procedures and guidelines in monitoring and classifying inmates and could reasonably be expected to endanger the life or physical safety of third-party individuals if disclosed. |
| | B | 1 | Correspondence dated November 7, 2005, from USP Terre Haute Warden Mark Bezy to third party, non-inmate regarding correspondence privileges with inmate Gabrion. | | |
| | C | 2 | Correspondence dated October 24, 2005, from third party, non-inmate regarding correspondence privileges with inmate Gabrion. | | |
| | D | 1 | Correspondence dated January 16, 2007, from a third party, non-inmate addressed to USP Terre Haute Counselor B. Ryherd | | |

3

|    |   |    | regarding placement on inmate Gabrion's approved telephone list. |    |    |
|----|---|----|---|---|---|
|    | E | 1  | Correspondence dated January 15, 2007, from a third party, non-inmate addressed to USP Terre Haute Unit Manager R. White regarding placement on inmate Gabrion's approved telephone list. |    |    |
|    | F | 2  | Correspondence dated March 21, 2002, from USP Terre Haute Warden Keith E. Olson to third party, noninmate regarding communications between third parties and inmate Gabrion. |    |    |
|    | G | 1  | Correspondence dated July 7, 2003, from USP Terre Haute Warden Keith E. Olson to a thirdparty, non-inmate regarding visitation privileges. |    |    |
|    | H | 1  | Partial correspondence dated June 25, 2003, from a third party, noninmate addressed to USP Terre Haute Warden Keith E. Olson. |    |    |
| 14 |   | 44 | Inmate Population Monitoring Records contained in inmate Gabrion's Special Investigative Services File, dated January 30, 2013, June 10, 200? [sic], and May 28, 2009. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were applied to withhold information pertaining to third-party individuals. Disclosure of this information would be an unwarranted invasion of other individuals' privacy Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold monitoring, classification and management techniques and determinations regarding inmate Gabrion, |

| | | | | |
|---|---|---|---|---|
| | | | | including the information relied upon to make those determinations. Disclosure of these records would endanger the life or physical safety of inmate Gabrion, third-party inmates and staff and enable inmates to circumvent and/or nullify the effectiveness of this monitoring and classification procedure. |
| 15 | 6 | Inmate Population Monitoring Records contained in inmate Gabrion's Special Investigative Services file, dated September 12, 2001. | (b)(7)(E) (b)(7)(F) | Exemption (b)(7)(E) was applied to withhold law enforcement techniques used to manage and monitor the inmate population. Disclosure of these records would enable inmates to circumvent and/or nullify the effectiveness of this technique. Exemption (b)(7)(F) was applied to withhold the programming assignments the BOP uses to classify and monitor groups of inmates. Although the FOIA requestor is seeking these records on inmate Gabrion's behalf and with his consent, the programming assignment is sensitive information that, if released while inmate Gabrion remains incarcerated, is nonetheless likely to endanger his life or physical safety if known by other individuals. |
| 17 | 5 | Program Forms contained in inmate Gabrion's Central File dated January 30, 2013. | (b)(7)(E) (b)(7)(F) | Exemption (b)(7)(E) and (b)(7)(F) were applied to withhold these records used by the BOP to monitor and classify inmate Gabrion. Disclosure of these records would enable inmates to circumvent and/or nullify the effectiveness of this monitoring and classification system and would endanger the life or physical safety of inmate Gabrion and staff. |
| 18 | 16 | Inmate Population Monitoring Records | (b)(6) (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) were applied to these records to |

| | | | | |
|---|---|---|---|---|
| | | contained in inmate Gabrion's Special Investigative Services file, dated May 28, 2009 and June 10, 2009. | (b)(7)(E) (b)(7)(F) | withhold personal information of third parties. Disclosure of this information would be an unwarranted invasion of the other individuals' privacy. Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold techniques and procedures used by the BOP to monitor and track inmates subject to specific reporting requirements. Disclosure of these records would enable inmates to circumvent monitoring and would endanger the life or physical safety of third parties. |
| 19 | 5 | Central Inmate Monitoring (CIM) Clearance and Separatee Data for Marvin Gabrion, dated May 25, 2009. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | These records were withheld under (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F). The withheld information consists of inmate names, register numbers, and staff comments regarding the BOP's incarceration and management of those inmates. The BOP has determined that these individuals need to be separated from inmate Gabrion. Release of this information would constitute an unwarranted invasion into third-party inmates' privacy interests, would reveal law enforcement techniques or procedures, the disclosure of which would reasonably be expected to risk circumvention, and is likely to endanger the life or physical safety of the third-parties if known by inmate Gabrion or other individuals due to the same reasons underlying their separatee status. |
| 20 | | May 28, 2009 video recording in the USP Terre Haute Special Confinement Unit Visiting Room. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Exemption (b)(6) and (b)(7)(C) were applied to withhold the images of third-party individuals who were recorded in this video, as disclosure would be an unwarranted invasion of their |

6

|  |  |  |  | privacy. Exemptions (b)(7)(E) and (b)(7)(F) were also applied to withhold the video, as disclosure would reveal law enforcement procedures and techniques including, visiting room camera location, staff response time and procedures, and locations not recorded by the visiting room camera, which, if disclosed, could reasonably be expected to risk circumvention or endanger the life or physical safety of third parties. |
|---|---|---|---|---|

Dkt. No. 36-1.

### III.  DISCUSSION

The Freedom of Information Act ("FOIA") generally contemplates a policy of broad disclosure of government documents and serves the basic purpose of "ensur[ing] an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA's purpose is to guarantee "that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989).[1] Further, Congress has structured various exemptions from the FOIA's disclosure requirements in order to protect certain interests in privacy and confidentiality.

---

[1] At the outset, the Court notes that, while it appreciates counsel's candor in explaining the goal of this litigation – to obtain evidence relevant to an evaluation of Gabrion's mental condition – "neither an individual's identity nor his intended use for the documents is relevant to a FOIA request." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1041 (7th Cir. 1998).

7

Because disclosure is the "dominant objective" of FOIA, the Court narrowly construes FOIA Exemptions. *Patterson v. I.R.S.*, 56 F.3d 832, 835 (7th Cir. 1995); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). As such, the government agency has the burden to support its decision to deny the FOIA request. *Patterson*, 56 F.3d at 836. The court must determine de novo whether the government has satisfied its burden. 5 U.S.C. § 552(a)(4)(B). In doing so, the court must give "meaningful reach and application" to the exemptions while also taking care to construe them narrowly, given the Act's general policy of disclosure. *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998) (internal citations omitted). Because FOIA cases usually involve only a dispute over how the law is applied to the withheld records, rather than any factual dispute, whether the government is justified in invoking an exemption is typically decided at the summary judgment phase. *See, e.g.*, *id.* at 1036; *Wright v. Occupational Safety & Health Admin.*, 822 F.2d 642, 644 (7th Cir. 1987). The court may grant summary judgment in favor of the agency in a FOIA case "only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *Patterson*, 56 F.3d at 836 (quoting *PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993)). Further, "[w]ithout evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned." *Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992) (citation omitted).

The Defendants have asserted a privacy interest pursuant to FOIA Exemptions 6 and 7(C) for Groups 10, 11, 13, 14, 18, 19, and 20. Groups 10, 11, and 13 were withheld in full, while Groups 14, 18, 19, and 20 were withheld in part. Additionally, the Defendants have asserted

exemptions under 7(E) and 7(F) for Groups 13, 14, 18, 19, and 20.[2] The Court notes that "[i]f the Court determines that information properly is withheld under one exemption, it need not determine whether another exemption applies to that same information." *Coleman v. Lappin*, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) (citing *Simon v. U.S. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992)).

Generally, Exemption 7 shelters "records or information compiled for law enforcement purposes," when the production of the information may result in one of six enumerated harms. 5 U.S.C. § 552(b)(7)(A)-(F). As such, the withholding agency must prove both the threshold law enforcement purpose plus the danger that at least one of the specified harms may result from disclosure. *See FBI v. Abramson,* 456 U.S. 615, 622 (1982). Consistent with BOP's mission, which includes "provid[ing] for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States," 18 U.S.C. § 4042(a)(2), the BOP is considered a law enforcement agency. An employee of the Bureau of Prisons is a law enforcement officer. 5 U.S.C. § 8401(17)(D)(i). Part of the BOP's law enforcement mission is to protect inmates, staff, and the community. *See* 18 U.S.C. § 4042(a)(1)-(3).

Exemptions 6 and 7(C) protect against disclosure of information that would result in an unwarranted invasion of personal privacy. 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Exemption 7(C) permits the withholding of documents that were compiled for law enforcement purposes where release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 6 states that FOIA does not apply to matters that are "personnel and medical files and similar files the disclosure of which would constitute a

---

[2] The Defendants have submitted a declaration from Kara Christenson, a Paralegal for the North Central Regional Office of the Federal Bureau of Prisons, in support of their motion.

9

clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). While similar, "Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that could reasonably be expected to constitute an invasion of privacy that is unwarranted, while the latter bars any disclosure that would constitute an invasion of privacy that is clearly unwarranted." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) (internal quotation marks omitted). Thus, if the Defendants can establish that the material was compiled for law enforcement purposes, they must satisfy only the lower withholding standard contained in Exemption 7(C). *See Patterson,* 56 F.3d at 838-39.

To determine if disclosure is required, the Court must balance the competing interests in public disclosure and the privacy interest of the individual referenced in the record. *See Reporters Comm.*, 489 U.S. at 762. Gabrion's personal interest in the materials is irrelevant to this weighing. *See U.S. Dep't of Defense v. Fed. Labor Relations Auth*., 510 U.S. at 496 ("Congress clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest [in a particular document].)" (alteration in original) (internal citations and quotations omitted); *Hawkins v. D.E.A.*, 347 Fed. Appx. 223, 225 (7th Cir. 2009) ("[A] prisoner's interest in attacking his own conviction is not a public interest.").

Exemption 7(E) allows the agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption 7(F) permits withholding of "records or information compiled for law

enforcement purposes" that, if disclosed, "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

### a. Group 10

The document at issue in Group 10 is a one-page Incident Report issued to a third-party inmate regarding an incident in the USP Terre Haute Special Confinement Unit on August 30, 2007. Gabrion argues that the report is in his Central File and thus has sufficient relevancy to him. However, as noted above, the interests of the public, not Gabrion himself, are relevant to the Court's weighing of the interests at issue. Here, the third party's privacy interest in his discipline record outweighs the public's interest in disclosure. *See Reporters Comm*, 489 U.S. at 780 ("When the subject of such a rap sheet is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir.") The Defendants properly withheld the document in Group 10 under Exemption 7(C).

### b. Group 11

The information at issue consists of ten pages of a staff injury assessment and photographs dated May 25, 2009. Gabrion argues that the report is in his Central File and thus has sufficient relevancy to him and that a guard or staff member cannot have a personal privacy expectation. Exemption 6 specifically protects from disclosure "medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). *See Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 651 (7th Cir. 2013) (finding that absent "extraordinary circumstances," it would violate a third party's privacy to turn over that party's medical records); *Lakin Law Firm, P.C. v.*

*F.T.C.,* 352 F.3d 1122, 1124 (7th Cir. 2003) ("[P]ersonal identifying information is regularly exempt from disclosure. And that is as it should be, for the core purpose of the FOIA is to expose what the government is doing, not what its private citizens are up to."). The third-party staff member's privacy interest in non-disclosure of his records detailing this injury outweighs any public interest in the disclosure of the documents. As such, the Defendants properly withheld the records in Group 11 under Exemptions 6 and 7(C).

    c. **Group 13**

Group 13 consists of eight pieces of correspondence between third-party non-inmates and BOP staff members at USP Terre Haute. The declaration provides the date of correspondence, status of the author, the BOP staff involved, and the general topic of each letter. Gabrion argues if the correspondence is from persons who seek permission to visit him, he has the right to know and there is no privacy right involved. The Defendants have responded that none of the correspondence involved an attempt to contact Gabrion; rather, the correspondence was related to the third parties' concerns regarding Gabrion's communication and visitation. Moreover, the Defendants argue that, even if names and addresses were redacted, Gabrion would be able to tell the identities of those parties. The privacy interests of the third parties who corresponded with the BOP regarding Gabrion outweigh the public's interest in the documents, as disclosure would not advance public transparency in the operations of the BOP. As such, the Defendants properly withheld the records in Group 13 under Exemption 7(C).

    d. **Group 14**

Group 14 consists of inmate population monitoring records contained in Gabrion's Special Investigative Services File dated January 30, 2013; June 10, 200? [sic]; and May 28, 2009. While some of the information was disclosed, the Defendants indicate that they withheld

the names and register numbers for third-party inmates, as well as staff comments regarding the BOP's incarceration and management of those inmates. Gabrion argues that the information might reflect on his mental state. The third parties have an interest in their personal information and identity and location information, and that interest in not outweighed by the public's interest in the documents. As such, the Defendants properly withheld the records in Group 14 under Exemption 7(C).

### e. Group 15

Group 15 consists of inmate population monitoring records contained in Gabrion's Special Investigative Services File dated September 12, 2001. The Defendants indicate that Group 15 "consist[s] of internal assignments that fall under the broad [Central Inmate Monitoring] assignments used for classification and monitoring and are used to develop specific procedures for managing inmates." Dkt. No. 46-1 at 15. The Defendants argue that disclosure of the classification and monitoring criteria could assist criminals in evading the monitoring techniques employed by the BOP, leading to safety and security concerns. Gabrion argues that there has been no showing that any investigative techniques are not already generally known to the public and that the information might reflect on his mental state. The Court finds that Exemption 7(E) applies, as disclosure would reveal techniques, procedures, and guidelines that could reasonably be expected to risk circumvention of the law. Disclosure of classification and monitoring techniques could allow inmates to use the information in a way that could threaten the safety of guards and other prisoners. As such, the Defendants properly withheld the records in Group 15 under Exemption 7(E).

**f. Group 17**

Group 17 consists of items in Gabrion's Central File identified as "Program Forms." The Defendants indicate that the items address Gabrion's affiliations, if any, and the criteria on which those determinations are based. Gabrion argues that there has been no showing that any investigative techniques are not already generally known to the public and that the information might reflect on his mental state. The Court finds that Exemption 7(E) applies, as disclosure would reveal techniques, procedures, and guidelines that could reasonably be expected to risk circumvention of the law. Disclosure of classification and monitoring techniques could allow inmates to use the information in a way that could threaten the safety of guards and other prisoners. As such, the Defendants properly withheld the records in Group 17 under Exemption 7(E).

**g. Group 18**

Group 18 consists of "Inmate Population Monitoring Records" from May 28, 2009, and June 10, 2009. The documents were provided in part, but names and contact information for third parties were withheld. The Defendants allege that disclosure of the withheld information would be an unwarranted invasion of the other individual's privacy and would endanger the life or physical safety of third parties. Gabrion argues that the information might reflect on his mental state. The third parties have an interest in their personal information and identity and location information, and that interest is not outweighed by the public's interest in the documents. As such, the Defendants properly withheld the records in Group 18 under Exemption 7(C).

**h. Group 19**

Group 19 consists of "Clearance and Separatee Data" for Gabrion from 2009. The Defendants indicate that it withheld the names, register numbers, sentence, classification, and

management information for third-party inmates and specific locations of the inmates from whom Gabrion must be separated. Gabrion argues that the information might reflect on his mental state. The Defendants allege that disclosure of the withheld information would be an unwarranted invasion of the other individual's privacy and would endanger the life or physical safety of third parties. The third parties have an interest in their personal information and identity and location information, and that interest in not outweighed by the public's interest in the documents. As such, the Defendants properly withheld the records in Group 19 under Exemption 7(C).

### i. Group 20

Group 20 consists of a video recording from a SCU visiting room. The video shows Gabrion assaulting a visitor and the staff response to the assault. The Defendants indicate that the video reveals the BOP's ability to monitor the visiting rooms, including camera placement and blind spots. It also reveals staff response time and method of response. Gabrion argues that the video appears to involve the attorney who made the initial FOIA request. The Court finds that Exemption 7(F) applies, as disclosure of the video would present clear risks to law enforcement officials. Other prisoners might learn this information and use it in the future. *See Zander v. Dep't of Justice*, 885 F. Supp. 2d 1, 7-8 (D.D.C. 2012) (finding that disclosure of a recording of a cell extraction raised the possibility that other prisoners would learn the methods and procedures utilized by BOP officials and use the information to prevent the safe application of these techniques in the future). As such, the Defendants properly withheld the records in Group 20 under Exemption 7(F).

## IV. CONCLUSION

The Court finds that the BOP properly withheld all of the groups that remain in dispute. *In camera* review is not required, as the Defendants have provided sufficient detail as to each Group to allow the Court to rule without reviewing the documents. As such, the Court **GRANTS** the Defendants' cross motion for summary judgment and **DENIES** Gabrion's motion for summary judgment.

**SO ORDERED: 9/21/16**

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic communication.